Ronald Ryan
Attorney for Plaintiffs
1413 E Hedrick Dr
Tucson AZ 85719
phone: (520)298-3333 fax: (520)743-1020
ronryanlaw@cox.net
AZ Bar #018140 Pima Cty #65325

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ARIZONA TUCSON DIVISION**

| | |
|---|---|
| DAVID CONNELLY, | Adversary No: 12-ap-00100-EWH |
| DEBTOR AND PLAINTIFF | Case No: 09-33553-TUC-EWH |
| vs. | **COMPLAINT TO DETERMINE THE EXTENT AND VALIDITY OF LIEN ON REAL PROPERTY, FOR QUIET TITLE, FOR INJUNCTIVE RELIEF, TO RECOVER MONEY, PURSUANT TO STATUTORY AND/OR EQUITABLE DAMAGES, ATTORNEY FEES AND COSTS, FOR DECLARATORY RELIEF, AND A CONDITIONAL ACTION FOR AN ACCOUNTING AND TO OBTAIN UNAPPLIED CREDITS** |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR THE BENEFIT OF HARBORVIEW MORTGAGE LOAN TRUST 2005-3, | |
| AND DOES 1-1000 | |
| DEFENDANTS | |

COMES NOW, David Connelly, Debtor and Plaintiff, and files this Complaint to Determine the Extent and Validity of Lien on Real Property, for Quiet Title, for Injunctive Relief, to Recover Money, Pursuant to Statutory And/or Equitable Damages, Attorney Fees and Costs, for Declaratory Relief, and a Conditional Action for an Accounting and to Obtain Unapplied Credits, and presents unto the Court as follows:

**JURISDICTION, VENUE, PARTIES AND BACKGROUND**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157; 1334;

1

1652; 2201; FRCP 57, and B.R. 7001(1), (2), (7) and (9), and A.R.S. § 12-1831, et seq. FRCP 57; Pursuant to B.R. 3007(b), an Objection to Claim may be included in an Adversary Proceeding. However, as of the date this Complaint is filed, no Proof of Claim has been filed in this case. Venue is appropriate in this district pursuant to 28 U.S.C. §1408 and 1409. This matter is a core proceeding.

2.      U.S. Bank National Association, as Trustee, for the Benefit of Harborview Mortgage Loan Trust 2005-3 ("US Bank" or "US Bank as MBS Trustee"), can be served through their chosen representative for service of process as directed by Rob Von Hess, Vice President U.S. Bank National Association, which is through Michael A. DeBois, General Counsel - Corporate Trust Services, U.S. Bank Trust Legal, EP-MN-WS4L, 60 Livingston Ave., St. Paul, MN 55107. It may also be served through the Notice Address provided in Section 12.05, of the Pooling and Servicing Agreement of the HarborView Mortgage Loan Trust 2005-3, Mortgage Loan Pass-Through Certificates, Series 2005-3, dated May 1, 2005: U.S. Bank N.A., Trust Administrator, Attention: HarborView 2005-3, One Federal Street, Boston Massachusetts, 02110. It may also be served through Richard K. Davis CEO U.S. Bancorp, Parent of U.S. Bank N.A., Corporate Headquarters U.S. Bancorp, U.S. Bancorp Center, 800 Nicollet Mall, Minneapolis, MN 55402.

3.      On or about March 29, 2005, Plaintiff borrowed a sum of money in the amount of $273,523.00, in a mortgage loan transaction wherein ComUnity Lending, Inc. dba Paradigm Home Lending ("ComUnity" or "Lender"), acted in the role of "Lender" pursuant to the Deed of Trust recorded on March 31, 2005, with the Pima County Recorder at Docket 12521, Page 9100 ("DOT"). The Note that was originally secured by the DOT and dated March 29, 2005, is referred to herein as the "Note." The debt evidenced by the Note when originally made is

2

the "Loan." The purported lien claim represented by this Deed of Trust is herein called the "Primary Lien." No Proof of Claim has yet been filed in this case. Upon information and belief, ComUnity is a co-debtor in a large multi-corporation consolidated Chapter 11 Bankruptcy. Upon information and belief, BAC, is holding itself out as the Servicer of the Loan on behalf of US Bank, whom it claims is the owner of the Loan, and that it claims to have succeeded to the Servicing rights from Countrywide Home Loans, Inc. ("Countrywide").

4. The property in question in this case ("Property") is Plaintiff's Residence, and is described as:

> LOT 104, OF FINAL PLAT OF GLADDEN FARMS BLOCK 12, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF PIMA COUNTY, ARIZONA, RECORDED IN BOOK 57 OF MAPS, PAGE 76, AND AS MORE COMMONLY KNOWN AS 1085 W DENIER DR MARANA AZ 85653

**COUNT 1**
**DETERMINATION OF EXTENT AND VALIDITY OF LIEN AND QUIET TITLE WITH CORRESPONDING INJUNCTIVE RELIEF**

5. Plaintiff seeks a determination of the extent and validity of a lien on Real Property (the "Property") pursuant to B.R. 7001(2), which provides for an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property." In this regard, BAC, formerly Countrywide, has asserted itself as Servicer and collection agent on behalf of US Bank, in its capacity as Trustee, for the Benefit of Harborview Mortgage Loan Trust 2005-3. It took many months and several attempts to obtain information as to whom BAC claimed was the owner of Plaintiff's Loan, Note and Mortgage. Eventually, BAC informed Plaintiff that it was US Bank for whom it purported to act as Servicer and that US Bank as MBS Trustee was the party that claimed ownership

3

of the Loan, Note and Mortgage. However, there has been no Proof of Claim filed.

6. The basis for the determination of the extent and validity of the lien claim in Arizona State Law is the Quiet Title Statute, ARS 12-1101, et seq.

> An action to determine and quiet title to real property may be brought by any one having or claiming an interest therein, whether in or out of possession, against any person or the state when such person or the state claims an estate or interest in the real property which is adverse to the party bringing the action.

ARS 12-1101(A). Plaintiff is the owner of the Property and therefore has standing to bring such action. US Bank is a party that claims an interest, in the form of a lien claim, that is adverse to Plaintiff's claim to clear title. As provided by § 12-1102, this complaint:

1) Is made under oath;

2) Hereby states that the nature and extent of plaintiff's estate in the Property is that they are the owner and legal title owner of the Property, and that upon information and belief, Plaintiff holds the Property free of any legitimate lien claim;

3) Has described the premises in this Complaint;

4) Hereby states that Plaintiff is credibly informed and believes US Bank makes an adverse claim to plaintiff, in that it claims to be the owner of the Loan, Note and Mortgage;

5) Hereby and herein prays for the establishment of plaintiff's estate free of US Bank's lien claim and that US Bank, and all parties acting on its behalf, and any successor be barred and forever estopped from having or claiming any right or title to the Property adverse to Plaintiff, including any lien claim.

7. A quiet title complaint and judgment encompasses the right to a recordable judgment that effectively removes cloud upon title, that are recorded documents wrongfully casting doubt upon a plaintiff's clear title. Plaintiff alleges that the following documents create a cloud upon title that should be removed by the terms of the judgment in this case:

4

- A) Assignment of Deed of Trust ("ADOT"), Recorded Sep 29, 2009, at Pima County Docket 13653, Page 3428;[1]
- B) Substitution of Trustee ("Subs Trustee"), Recorded Sep 29, 2009, at Pima County Docket 13653, Page 3430;
- C) Notice of Trustee Sale ("Notice of Trustee Sale"), Recorded Sep 29, 2009 at Pima County Docket 13653, Page 3432, Sequence 20091880718;
- D) Deed of Trust recorded on March 31, 2005, with the Pima County Recorder at Docket 12521, Page 9100 ("DOT").

8. Upon information and belief, US Bank is not the owner of the Loan and Note. Upon information and belief, US Bank did not pay value for the Note and Loan to the party that previously owned it, which party would have had to pay value for the Note and Loan. Therefore, US Bank is not secured with the Mortgage on the Property.

9. Plaintiff denies that US Bank is the holder of the Note. Plaintiff denies that US Bank as Trustee has the right to enforce the Note. Plaintiff denies the authenticity, validity and authority to make any indorsements that appear on the original Note. Plaintiff denies the validity and authority not to have the indorsements that were required to be signed or stamped upon the Note, pursuant to the terms of the Securitization Documents, including the lack thereof. Since Plaintiff has denied these matters in the pleadings, US Bank has the burden of proof on each of these allegations.

10. Upon information and belief, the funds that were loaned to Plaintiff came from investment dollars generated by the sale of interests in one or more MBS Trusts, in the form of Mortgage Backed Securities, aka Mortgage Bonds. Alternatively, no funds actually

---

[1] Recorded documents referenced are those recorded with the Pima County Recorder, with doc #, page #, and date recorded, provide the indexing details used by the Recorder's Office.

5

ever changed hands.

11. Upon information and belief, it is legally impossible for the US Bank to ever have obtained ownership of the Loan, Note and Mortgage. Plaintiff will expound upon this after receiving copies of the Securitization Mortgage Loan File, including a current true and correct copy of the Note and other information and documents that describe and demonstrate ownership and transfer of the Mortgage Loan.[2]

12. Upon information and belief, it is a legal impossibility for US Bank, or any party acting on its behalf, to be the holder of the Note.

13. Upon information and belief, the only party whose own funds were placed at risk when the Loan was made, even on a temporary basis, were the Investors in the MBS Trust. Accordingly, the only party that can have an ownership interest in the Loan and Note, and the only party that can have the security interest, meaning the Mortgage, is US Bank on behalf of the Investors. US Bank is the only party that can factually, contractually or legally act on behalf of the Investors.

14. The only party potentially harmed by the failure of the MBS Trust to have obtained ownership of the Loan, Note and Mortgage are the Investors. Equity cannot repair the failed sale and transfer of the Loan, Note and Mortgage to the MBS Trust. Therefore, upon information and belief, Plaintiff will prove that the only party that has, or can have as a matter of logical necessity, a legitimate claim to legal title or a security interest in the Property is Plaintiff. The remedy for the MBS Investors is access to their credit default contracts and/or a lawsuit against the parties that were negligent in

---

[2] All of which have been requested several times over months and years, but which have not yet been produced.

6

performing their duties necessary for the Trust to obtain ownership of the Loan, Note and Mortgage.

15. Upon information and belief, ComUnity, sold and transferred the Note to the first of a series of entities within days or weeks of its execution. After said sale, Lender no longer had any interest in the Loan or Note and no power to transfer it, because it had already been sold and transferred to another.

INJUNCTIVE RELIEF

16. The Injunctive Relief that is included as an essential element of a Quiet Title Action, pursuant to ARS 12-1101(A)(5), is also available to Plaintiff in this adversary complaint, pursuant to B.R. 7001(7), which provides that an adversary proceeding may include, "a proceeding to obtain an injunction or other equitable relief." The injunction that is appropriate to plead for now, but which will not be ripe until the final results on the merits is reached is to make permanent the determination of the extent and priority of the lien is that neither US Bank nor its privies has or can ever have a security interest in the Property, that is the same result that can and must be had in a state law quiet title action.

17. Plaintiff leaves open the possibility that he may apply for a temporary injunction if circumstances develop that such is necessary at some point before this adversary proceeding is concluded on the merits.

**COUNT II**
**COMPLAINT TO RECOVER MONEY FOR FALSE RECORDED DOCUMENTS AND NOTARY FRAUD**

1. Plaintiff files this Complaint to Recover Money, pursuant to B.R. 7001(1), which provides that an adversary proceeding is available, "to recover money or property." In this regard, Plaintiff seeks the recovery of treble actual or mandatory or exemplary and

7

equitable damages, along with attorney fees and costs, from US Bank, pursuant to ARS §§ 33-420(A) and ( C); and 11 U.S.C. §§ 105 and 362(a).[3]

2. US Bank recorded or caused to be recorded each of the three below defined "false documents."[4] US Bank purports to claim a lien or encumbrance against the Property. US Bank is responsible for all such violations, inasmuch as it claims to be the MBS Trustee, and claims to be the owner of the Loan and beneficiary of the Note and DOT in such capacity, and has been conducting business as though said claim to the lien were valid. US Bank has been conducting business as though BAC, formerly Countrywide, were the Servicer on its behalf. Accordingly, it has authorized BAC and Recontrust to be its agent with authority or apparent authority to act and conduct business on its behalf. US Bank is liable directly, or is vicariously liable, or is liable because it claims, as a matter of law, to have the power to direct all actions pertaining to the drafting, execution and recording of all such documents pertaining to the Note and DOT in this case. More specifically, US Bank is liable for all violations by Leticia Quintana, established below, as well as all Notary Public persons that notarized documents in this case.

3. Plaintiff alleges that the following are "false documents" and that they therefore contain violations of violations of ARS §§ 33-420(A) and ( C):

---

[3] Other relevant provisions of the law are ARS § 39-161, states that it is a felony to certify, acknowledge or notarize recorded or recordable documents, as well as for soliciting acknowledgments, certifications and notarization of false recorded or recordable documents.

[4] For purposes herein, "false documents" shall have the meanings specifically set forth in ARS §§ 33-420(A), 33-420( C), which is that it is forged, groundless, contains a material misstatement of fact or false claim or is otherwise invalid.

8

A) The ADOT, described above.[5]

B) The Substitution of Trustee.

C) The Notice of Trustee Sale ("Notice of Trustee Sale"),

4. The ADOT was executed with the name of "Leticia Quintana," who signed as "Assistant Secretary of MERS," on behalf of ComUnity as a matter of necessary implication, purporting to assign the DOT and ownership of the Loan and Note to US Bank. It was purportedly notarized by a licensed Notary Public, Elizabeth Lopez, on 09/25/2009, in Ventura County, CA. The "false document" nature of the ADOT includes:

A) Leticia Quintana is not and never was an Assistant Secretary of MERS;

B) All MERS ADOT, meaning those purportedly executed by an officer of MERS have been established as void and invalid: 1) pursuant to established case law; 2) pursuant to the MERS Federal Consent Order Including Cease and Desist Orders; and 3) pursuant to MERS Membership Rules that were amended more than one-year ago, to make it clear to MERS Members that it can no longer execute such MERS Assignments and must clean the record of such MERS Assignments previously recorded, which rules were amended to comply with the aforementioned MERS Federal Consent Order Including Cease and Desist Orders.

C) The ADOT was not signed stating that it was done pursuant to authority granted by ComUnity Lending, Inc. dba Paradigm Home Lending, and moreover, upon information and belief, it was not signed pursuant to such authority.

D) The Notary section on the actual page of the document is crossed out, and the notarization appears on a separate page. Therefore, it is doubtful that the signature was made in front of the notary, and even that they were even in the same city, and also that it was signed at or near the time that it was notarized.

5. The Subs Trustee, contained the signature of Leticia Quintana, who signed

---

[5] All the false documents were more fully described above.

9

as "Assistant Secretary to US Bank," and in such capacity appointed Recontrust as the Substitute DOT Trustee. It was also notarized, reputedly by Elizabeth Lopez, on 09/25/2009, in Ventura County, CA. The "false document" nature of the Subs Trustee includes:

    A) the fact that Leticia Quintana is not and never was an Assistant Secretary of US Bank.

    B) The Subs Trustee was not signed with authority to do so. Despite the fact that Quintana was not an Assistant Secretary of US Bank, even if she had been, US Bank did not have authority to appoint a substitute trustee because the only source of its apparent power to do so was the ADOT, which has been shown to be a false document.

    C) The Notary section on the actual page of the Subs Trustee document is crossed out, and the notarization appears on a separate page. Therefore, it is doubtful that the signature was made in front of the notary, and even that they were even in the same city, and also that it was signed at or near the time that it was notarized.

6. False facts are self-evident on the face of the Notice of Trustee Sale document. The "false document" nature of the Notice of Trustee Sale, includes the following:

    A) There is perjury that is the document establishes without the need of any other evidence. The meaning of the notarization of the Notice of Trustee Sale, meant that Notary Public, Elizabeth Lopez, swore on her oath as public official, that Leticia Quintana was the person whose signed the document in her presence at the time that she notarized it. She swore that Quintana had proven upon satisfactory evidence to be the person that executed the document and had proven herself be an authorized signer on behalf of Recontrust. But the Notice of Trustee Sale itself proves that Quintana did not sign the document, but that "Daniel Rodriguez," signed the document as "Team Member" of Recontrust as DOT Trustee.

    B) The Notice of Trustee Sale depended upon the premise that the Subs Trustee was a true and valid document. Likewise, the Subs Trustee depended upon the premise that the ADOT was a true and valid document. As shown, these premise documents were false

10

documents.

7. All three documents were recorded with actual knowledge and/or with reason to know that they were forged, groundless, contained one or more material misstatements, amounted to false claims, or were otherwise invalid. Additionally, is self-evident, as well as provable with additional evidence that all three documents were intentionally prepared and executed with knowledge or with reason to know that they were "false documents." Additionally, is self-evident, as well as provable with additional evidence, that all three documents were intentionally recorded, prepared and executed with knowledge, or with reason to know, that notary fraud was involved with the notarization thereof, as defined in ARS § 39-161, which is a class 6 felony.

8. Accordingly, pursuant to ARS §§ 33-420(A), US Bank is liable to Plaintiff for treble actual damages or $5,000.00 mandatory damages for each violation, plus attorney fees and costs.

9. Plaintiff has evidence of the complete lack of believability, of "Leticia Quintana," and her employers, in accordance with Federal Rule of Evidence ("FRE") 404(a)(3), and has evidence of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, on the part of "Leticia Quintana" and her employers, in accordance with FRE 404(b), 405 and 406. "Leticia Quintana" and her employers, are known to have been guilty of a multitude of Robo-Signing violations, including acts that constitute the serial intentional recording of false documents and notary fraud. The "Leticia Quintana," signature appears as an "assistant secretary" of a multitude of separate corporations, such as Recontrust, Countrywide, MERS, Bank of NY Mellon, and many others. Upon information and belief, Leticia Quintana is actually an employee of

11

Recontrust, which is the same as being an employee of BAC, the alleged Servicing agent for US Bank, because both are wholly owned subsidiaries of Bank of America. Plaintiff has a plethora of admissible examples of official and recorded false documents, that contain perjured sworn statements and signatures, purportedly made by Leticia Quintana, as evidenced by her notarized signature.

10. Upon information and belief, BAC and US Bank are in violation of Federal Enforcement Orders for not remedying the violations alleged herein, which adds to their culpability.[6]

12. BAC and US Bank are in continued violation of Orders of the Arizona Attorney General for not remedying the violations alleged herein, which adds to their culpability.[7]

13. This paragraph applies to the extent that ARS § 33-420(A) is not applicable

---

[6] Consent Orders, including Cease and Desist Orders, was entered by Board Of Governors Of The Federal Reserve System; Federal Deposit Insurance Corporation; Officer Of Comptroller Of The Currency; and Office Of Thrift Supervision against MERS and all its members, including Bank of America, and all its subsidiaries, and US Bank, and all its subsidiaries (both of which had their own separate Consent Cease and Desist Orders entered against them), pursuant to section 7(d) of the Bank Service Company Act (12 U.S.C. § 1867(d)), and Cease and Desist Orders, under section 8(b) of the FDI Act (12 U.S.C. § 1818(b)) following a federal investigation on April 13, 2011. The Cease and Desist Order found that MERS, Bank of America and US Bank, engaged in "unsafe and unsound banking practices," including exactly the type of actions complained of here, as a matter of routine practice. These Orders required MERS, BAC and US Bank to correct the violations cited over one year ago, but none of those federal Orders were heeded in this case.

[7] The Arizona Attorney General, has taken a strong position against such Robo Signing violations, in a demand letter to all Mortgage Loan Servicers, dated October 7, 2010, entitled "'Robo-signing' of Foreclosure Documents in Arizona," making several demands to be complied with by October 17, 2010, none of which were heeded by BAC in this case.

12

to the cited false recorded documents violations, Plaintiff hereby formally presents written notice to US Bank to withdraw all falsely recorded documents, pursuant to ARS § 33-420 ( C), within twenty (20) days of service hereof.  If US Bank has not withdrawn from the Pima Country recorder all false recorded documents said 20 days, Plaintiff shall be entitled to treble damages, or $1,000.00 mandatory damages, plus attorney fees and costs.

14.     The recordation of the cited false documents had the effect of unlawfully establishing or attempting to establish or perfect a security interest in favor or US Bank, or to unlawfully create or keep in place a cloud upon Plaintiff's title, amounting to a violation of property of the estate under § 362(a)(3) and/or (4) of the Bankruptcy Code,   and/or against property of the Plaintiff-Debtor in violation of § 362(a)(5).

15.     In addition to the above rationale, the Court may find the following consideration pertinent to the requests for damages and attorney fees, either statutorily or equitably. What is sometimes called "Notary Fraud," pursuant to ARS § 39-161, pertains to class 6 felony criminal liability.  It encompasses documents that are recorded or which could be recorded, or which are filed or placed in evidence in a court proceeding, and pertains to actions:

    A)    By the notary public as one that certifies or acknowledges documents;

    B)    By the person executing a notarized document; and

    C )    By those that solicit the actions of either the Notary or the Signer. Though § 39-161 refers to, it may also form the basis to make a claim against the surety company that issued the Notary Bond, which must be at least in the amount of $5,000.00 for each wrongful transaction. The Notary Bonds may also be subject to payment of damages as set forth in §§ 33-420(A) and 33-420( C), although Plaintiff is holding US Bank responsible, as is their right.

13

**COUNT III**
**DECLARATORY RELIEF**

1. A Complaint for Declaratory Relief, pursuant to B.R. 7001(9), can provide the same relief as is available to Plaintiff pursuant to B.R. 7001(1), (2) and (7), because it provides that a declaratory judgment can include any of the relief available in any other type of adversary proceeding. It provides that an adversary proceeding includes "a proceeding to obtain a declaratory judgment relating to any of the foregoing," i.e., any of the adversary proceeding types delineated in B.R. 7001(1) through (8). Plaintiff seeks declaratory relief, such as is necessary to provide the same relief available pursuant to the Arizona Quiet Title Statute and B.R. 7001(2) and (7).

2. Plaintiff seeks declaratory rulings as are determined by the Court, as is necessary to carry out the purposes and intents of the relief requested in this Complaint.

3. Plaintiff seeks declaratory rulings pertaining to the documents recorded that constitute a cloud upon Plaintiff's title. The ADOT purports to be executed by MERS, and it grants, assigns and transfers the DOT and ownership of the Loan and Note to US Bank. It does not state on whose behalf it makes such grant, other than on behalf of the DOT Trustee, although as a matter of necessary implication it claims authority on behalf of Lender. Neither the DOT Trustee nor MERS ever owned the Loan and Note, and therefore never owned the security interest on their own behalf. Furthermore, the ADOT is a "false document," as more fully explained in Count II. Therefore neither the DOT Trustee nor MERS could transfer ownership of the Loan or Note. Since the mortgage security interest follows ownership of the Loan and Note the security interest could not be assigned independently thereof. Finally, Lender transferred its interest in the Note prior to

14

May 1, 2005 and it could therefore not grant, transfer nor assign any interest in the Loan, Note or Mortgage on September 29, 2009. Therefore, Plaintiff requests declaratory rulings that:

    A)     The ADOT is null and void;

    B)     The Subs Trustee is null and void;

    C)     The Notice of Trustee Sale is null and void; and

    D)     That Lender, ComUnity, transferred and completely divested itself of its interest in the Loan, Note and Mortgage prior to May 1, 2005, or on such other date as the evidence will show.

'

4.     Plaintiff further requests declaratory rulings that:

    A)     US Bank as Trustee is not the owner of the Loan and Note;

    B)     US Bank as Trustee is the holder of the Note;

    C)     US Bank as Trustee has no right to enforce the Note;

    D)     Determine the authenticity, validity and authority to make any indorsements on the original Note, including the lack thereof, meaning the power to fail to make indorsements that were contractually required to be made upon the Note;

    E)     US Bank as Trustee has no security interest in the Property;

    F)     No party owns the Note, Loan, or DOT on the basis of privity with US Bank as Trustee;

    G)     No successor party to US Bank as Trustee can be the owner of the Loan, Note or Mortgage.

5.     Plaintiff seeks the following declaratory rulings:

    A)     That Lender, ComUnity, is not the holder of the Note. Therefore, Lender does not have the right to enforce the Note.

    B)     That Lender does not own any interest, in the Loan, Note or Mortgage.

15

        C)     Plaintiff is not indebted to Lender.

        D)     Lender does not have a security interest in the Property.[8]

**COUNT IV**
**CONTINGENT CLAIM FOR CREDIT FOR THIRD PARTY PAYMENTS AS MISCELLANEOUS PAYMENTS PURSUANT TO STATUTE AND DEED OF TRUST**

    1.     If contrary to information and belief it is later shown that the Note had been successfully pooled into the MBS Trust that it was intended to be pooled into, or was ever owned by any MBS Trust, it was owned in trust for the benefit of the Investors that purchased interests in the MBS Trust ("Certificate Holders" or "Bond Holders"), as described above.

    2.     If the Note had been successfully sold, negotiated and transferred to US Bank as Trustee, and pooled into the Harborview Mortgage Loan Trust 2005-3 trust pool, or it were otherwise shown that the pool had an equitable interest in the Loan, the underlying obligation has nevertheless been fully discharged by payments from Plaintiff and from third parties for which Plaintiff is legally entitled to be credited.

    3.     Assuming the Note was successfully pooled into ownership in trust for Certificate Holders, payments were made to or on behalf of said Certificate Holders by third party sources, such as Credit Default Swap ("CDS") sellers. Some of these payments were made pursuant to contractual provisions that were triggered when occurred what are sometimes called, "Credit Events." The contractual provisions are contained in the

---

[8] There is a difference between appearing to be a secured party pursuant to documents recorded with the county recorder and actually owning a valid security interest. The recording statutes are notice statutes and do not grant rights not otherwise possessed. The difference between facts cited in recorded documents and the truth are clouds upon title.

16

securitization documents, and in CDS contracts, in the case of CDS payments. The CDS contracts were purchased to insure the investments of the Certificate Holders. Plaintiff is legally entitled to receive monetary credit reducing his obligation for third party payments, aka "miscellaneous payments."

4. The Deed of Trust contains provisions that allow for the contingency that third party payments might be made to the owner of the Loan and Note. The DOT calls them "Miscellaneous Payments." Plaintiff claims entitlement to monetary credit for payments made by such third partes. The DOT provides that Miscellaneous Proceeds are to be applied to the obligation the exact same way that mortgage payments are to be applied.

> Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

¶ 11 of DOT on page 8.

5. The DOT contains exclusions, such that certain third party payments shall not be entitled to status as "Miscellaneous Payments," for which Plaintiff is entitled to be credited. The only 3rd Party payments that Plaintiff was contractually not entitled to be credited for, pursuant to the DOT, were Mortgage Insurance payouts, casualty insurance payouts and title insurance payouts. All other third party payments made on the Note are called "Miscellaneous Proceeds" in the DOT,[9] and Plaintiff seeks to be credited for only those that are not excluded in the DOT.

6. The "Miscellaneous Proceeds" provisions in the DOT are standard DOT form provisions. Although Plaintiff does not need statutory support for these credits, because

---

[9] DOT, p2, ¶ M.

17

they are contractually provided for, these provisions are in agreement with the U.C.C., "discharge by payment" rule that provides that payments made by or on behalf of a party obliged to pay the Note to a party entitled to enforce it discharges the obligation of Plaintiff. ARS § 47-3602(A).

> . . . an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument and to a person entitled to enforce the instrument. To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged . . .

A mortgagee or a beneficiary to a note and deed to trust is entitled to only one satisfaction of his debt prior to the discharge of the mortgagor or obligor.

7.  If there is any entity that can prove itself to be the owner of the Note and/or obligation, Plaintiff alleges that the evidence will show that Plaintiff has been discharged by satisfaction, as described above, of the entire obligation by a combination of payments from Plaintiff plus payments from third party sources. If such a party comes forward claiming to own the Loan and Note, Plaintiff is entitled to a complete accounting of all third party or Miscellaneous Payments made to or on behalf of the Investors.

8.  Therefore, in the alternative to the relief otherwise prayed for herein, if US Bank as Trustee, proves any right to payment on the Loan, Plaintiff seeks:

   A) A complete accounting for all 3rd Party Payments made to or on behalf of the Certificate Holders;

   B) Judgment for credits he is entitled to for 3rd Party Payments made against the Loan;

   C) A Declaratory Judgment specifying the amount of credit for such Miscellaneous Payments, as well as the remaining amount owed, if any, and whether or not any such remaining obligation is secured by the DOT, or otherwise.

18

Case 4:12-ap-00100-EWH    Doc 1    Filed 01/16/12    Entered 01/16/12 13:22:05    Desc
Main Document    Page 18 of 20

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court for the following relief, as requested above: That on final trial the Court:

A) Determine the extent and validity of US Bank as MBS Trustee's claim to lien on Plaintiff's above described Property, and that within that process the Court grant the same relief as would be available in a state court suit for quiet title as prayed for above, including whatever judgments it determines are just in recordable form, such that cloud upon title shall be removed;

B) Including injunctive relief for enforcement of the final determination as prayed for above, and leave open the possibility that a temporary injunction may be requested as some point in this proceeding;

C) That the Court make findings as to each claim of recording fraud, notary fraud and violation of the automatic stay set out above, and that the Court grant Plaintiff a monetary judgment as prayed for above for statutory mandatory or treble actual damages for each violation of the above recorded cited statutes and make a determination and award for additional equitable and exemplary damages;

D) That the Court make findings for an appropriate award of mandatory attorneys fees and costs and for any additional discretionary awards of same and enter judgment in accordance therewith;

E) That the Court grant declaratory relief as is shown by the evidence and as determined by the Court as prayed for above;

F) That should the condition present itself, as an alternative to the quiet title relief, that Plaintiff be granted a an accounting and obtain appropriate judgments for unapplied credits, as prayed for above;

G) That the Court make any other findings of fact and conclusions of law and include them in writing in the final judgment along with any other judgments as are justified by the evidence and determined by the Court to be in accordance with the pleadings and/or evidence.

Dated: January 16, 2011.

Respectfully submitted,
/s/ Ronald Ryan
Ronald Ryan, Plaintiff's Counsel

19

**VERIFICATION BY OATH**

I am Ronald Ryan, the attorney for Plaintiff in this case, and qualified to make this verification. To the best of my knowledge information and belief, the facts and allegations contained above are true and correct. This verification I make unsworn but by oath under penalty of perjury, on January 16, 2012.

/s/ Ronald Ryan
Ronald Ryan

20